**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| | **NO.  23-454** |
| **v.** | |
| **RAKIEM SAVAGE** | |
| **HANEEF PALMER** | |

<u>**MEMORANDUM OPINION**</u>

Defendants Rakiem Savage and Haneef Palmer are charged for their participation in a cargo theft conspiracy that culminated in the theft of over $230,000 worth of newly minted dimes.  The evidence against them includes records from the cell phone towers serving the area of the dime heist that were obtained pursuant to a search warrant.  Savage and Palmer now move to suppress these records, arguing that the search warrant failed to meet the Fourth Amendment's requirements of probable cause and particularity.  For the reasons that follow, their motion will be denied.

## I.    FACTUAL BACKGROUND

According to the indictment, Savage, Palmer, and two additional defendants—Ronald Byrd and Malik Palmer—were members of a conspiracy responsible for a string of break-ins of tractor trailers in the Philadelphia area.  In April 2023, members of the conspiracy robbed a tractor trailer carrying dimes from the U.S. Mint in Philadelphia to the Federal Reserve Bank in Miami, making off with over $230,000 worth of uncirculated coins.

As part of their investigation into the conspiracy, Philadelphia Police Department ("PPD") detectives applied for a warrant to obtain cell-site location information ("CSLI") from T-Mobile for the cell phone towers serving the immediate vicinity of the dime heist.  By way of

background:

> Cell phones perform their wide and growing variety of functions by connecting to a set of radio antennas called "cell sites." . . . Cell sites typically have several directional antennas that divide the covered area into sectors.  Cell phones continuously scan their environment looking for the best signal, which generally comes from the closest cell site.  Most modern devices, such as smartphones, tap into the wireless network several times a minute whenever their signal is on, even if the owner is not using one of the phone's features.  Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI).

*Carpenter v. United States*, 585 U.S. 296, 300-301 (2018).  *Carpenter* involved a law enforcement request for the CSLI associated with a single suspect's phone over a roughly four-month period, yielding "12,898 location points cataloging [the defendant's] movements."  *Id.* at 302.  This case, conversely, involved what is often called a "tower dump."  Such requests seek to obtain a list of <u>all</u> phones that connected to a single cell cite during a particular window, "allowing law enforcement to infer that the owners of those devices most likely were present in that site's coverage area during that time."  *Commonwealth v. Perry*, 184 N.E.3d 745, 754 (Mass. 2022).

  In the probable cause affidavit accompanying the warrant application, Detective Daniel Flynn explained that the tractor trailer carrying the dimes had been parked overnight in a Walmart parking lot when it was robbed.  Surveillance footage depicting the heist showed 10 or more individuals wearing dark clothing arriving in two vehicles, and investigators recovered a set of bolt cutters at the scene.  To identify these individuals, police sought CSLI for the "cell sites serving the area of" the dime heist during the time period of the robbery: "April 13, 2023 between the hours of 12:30 a.m. to 6:15 a.m. (EST)."   As Detective Flynn explained in his affidavit, "[b]ecause of the prevalence of cell phones in today's society, there is a strong

likelihood that the suspect(s) responsible for the crime was/were in possession of at least one cell phone at the time of the crime."  What's more, criminal associates commonly "communicate together via phone calls, text messages, and social media applications via data sessions and these communications most commonly occur on or through cellular devices."  As such, Detective Flynn attested, "law enforcement is often able to identify previously unknown suspect(s) by analyzing a list of active devices from an area at or near the time of an incident."  The application went on to specify the kinds of records sought (including records of voice calls, text messages, and data connections), and it stated that investigators believed the search of these records would reveal evidence of violations of multiple felonies, including: theft by unlawful taking, 18 Pa. C.S. § 3921; receipt of stolen property, 18 Pa. C.S. § 3925; and conspiracy, 18 Pa. C.S. § 903.

Based on this affidavit, a judge of the Pennsylvania Court of Common Pleas approved the application and issued the warrant.  The data produced in response to the warrant reflected a phone call between Savage and Palmer's phones while the heist was in progress, as well as another phone call made by Savage in the vicinity of the tractor trailer later that same morning. Savage and Palmer now move to suppress this evidence.

## II.   LEGAL STANDARDS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it provides that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Probable cause is established if there is a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  A

warrant violates the Fourth Amendment's particularity requirement if it fails to "describe the place to be searched and the items to be seized with particularity." *United States v. Rankin*, 442 F.Supp.2d 225, 229 (E.D. Pa. 2006). This requirement "is intended 'to prevent the police from undertaking a general, exploratory rummaging through a person's belongings.'" *Bartholomew v. Pennsylvania*, 221 F.3d 425, 428 (3d Cir. 2000) (quoting *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982)). "An overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." *United States v. $92,422.57*, 307 F.3d 137, 149 (3d Cir. 2002) (quoting *United States v. Christine*, 687 F.2d 749, 753 (1982)). The "principal means . . . for effectuating the rights secured by the Fourth Amendment is through the judicially created exclusionary rule." *Christine*, 687 F.2d at 757. The party who files a motion to suppress evidence bears the burden of proving the Fourth Amendment violation. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted).

## III.    DISCUSSION

In their motion to suppress, Savage and Palmer principally argue that tower dump warrants are "categorically unconstitutional," since police never have probable cause to obtain large amounts of CSLI data. They make this argument with reference to the Supreme Court's *Carpenter* decision. But *Carpenter* does not support their proposition. Indeed, the *Carpenter* Court expressly disclaimed any holding to that effect. *See Carpenter*, 585 U.S. at 316 ("Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI or 'tower dumps' . . . ."). And in the years since, litigation has largely focused on whether tower dumps are searches at all for Fourth Amendment purposes, or if police may access CSLI data via mechanisms other than a search warrant (such as an order issued pursuant to 18 U.S.C. §

2703(d)).  *Compare, e.g.*, *United States v. Adkinson*, 916 F.3d 605, 610-11 (7th Cir. 2019)

(holding that tower dumps are not searches because cell phone users consent to the collecting

and sharing of CSLI), *with United States v. Medina*, --- F.Supp.3d ----, 2024 WL 246614, at *12

(D.R.I. 2024) (holding that people "have a reasonable expectation of privacy in their short-term

CSLI, and thus a warrant was required for the Tower Dump Order").

       While interesting, that question is not implicated here, since required or not, police

obtained a warrant authorizing them to access the CSLI.  Savage and Palmer point to no decision

from any court, state or federal, holding that such warrants are categorically unconstitutional.

The government, conversely, identified numerous cases (albeit all non-precedential in this Court)

rejecting such a contention.  *See, e.g.*, *United States v. James*, 3 F.4th 1102 (8th Cir. 2021);

*United States v. Wright*, 2023 WL 6566521 (S.D. Ga. May 25, 2023); *United States v. Foster*,

2023 WL 155442 (D. Alaska Jan. 11, 2023); *Matter of Search of Info. Associated with Cellular*

*Tel. Towers Providing Serv. to [Redacted] Stored at Premises Controlled by Verizon Wireless*,

616 F. Supp. 3d 1 (D.D.C. 2022); *Hudson v. State*, 312 A.3d 615 (Del. 2024); *Commonwealth v.*

*Kurtz*, 294 A.3d 509 (Pa. Super. 2023).

       In the alternative, Savage and Palmer argue that even if tower dump warrants can be

constitutional under some circumstances, the warrant at issue in this case was deficient in various

respects.  Assuming arguendo for now that Savage and Palmer are correct the question becomes

whether the good faith exception applies: the Fourth Amendment exclusionary rule does not bar

the prosecution's use of evidence "obtained by officers acting in reasonable reliance on a search

warrant issued by a detached and neutral magistrate."  *United States v. Leon*, 468 U.S. 897, 900

(1984).

       "The good faith exception instructs that suppression of evidence 'is inappropriate when

an officer executes a search in objectively reasonable reliance on a warrant's authority.'" *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (quoting *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993)).  As the Third Circuit has explained, the purpose of the exclusionary rule is to deter "official unlawfulness," and so the remedy is not justified when "there is no police illegality and thus nothing to deter." *United States v. Stearn*, 597 F.3d 540, 560-61 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 921).  "Accordingly, a court should not suppress evidence seized under a warrant's authority, even if that warrant is subsequently invalidated, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* at 561 (quoting *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002)).

When, as here, police conduct a search pursuant to a warrant, the mere existence of the warrant is typically sufficient to establish that officers acted in "good faith and justif[ies] application of the good faith exception." *Hodge*, 246 F.3d at 308.  "[W]e neither expect nor require police to perform complex legal analysis in the field, for they are untrained in the law and are often called to make 'hurried judgment[s].'" *Stearn*, 597 F.3d at 561 (quoting *Zimmerman*, 227 F.3d at 436).  "Yet there are situations in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception." *Hodge*, 246 F.3d at 308.  These unusual situations include: (1) when the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate abandoned their judicial role and failed to perform their "neutral and detached function"; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and, (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.  *Id.*

In their motion, Savage and Palmer rely on the third and fourth exceptions to the exclusionary rule, contending that the search warrant authorizing the tower dump was "so conspicuously devoid of particularized probable cause, the good-faith exception to the exclusionary rule cannot rescue the warrant."[1]  "[T]he threshold for establishing this exception is a high one." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).  To succeed in this argument, Savage and Palmer would have to demonstrate that the magistrate's error was "so obvious that a law enforcement officer, without legal training, should have realized, upon reading the warrant, that it was invalid and should thus have declined to execute it.'" *$92,422.57*, 307 F.3d at 146.  Examples of such circumstances include "affidavits based on conclusory assertions, a single piece of outdated evidence, or an uncorroborated or unreliable anonymous tip." *United States v. Sarraga-Solana*, 263 F. App'x 227, 231 (3d Cir. 2008) (collecting cases).

The reasons for Savage and Palmer's arguments fall well-short of this threshold. Conceding that the search warrant included "pages of text and describe[d] the crime in detail," they identify three deficiencies they claim should have been obvious to the executing officers: (1) the warrant offered "a less than a 'bare bones' connection between the entity searched and the crime at issue"; (2) it "roundly failed to particularize the things to be seized"; and, (3) "it offered no tether (of any length) between the individuals searched and a crime."  With regard to the first and third supposed deficiencies, they are simply incorrect—the warrant explained, at great length, how and why police could use CSLI records to identify the perpetrators of the dime heist. And the second supposed deficiency merely restates their primary argument—*i.e.*, that tower

---

[1] Savage and Palmer do not challenge the veraciousness of Detective Flynn's probable cause affidavit or the neutrality of the Court of Common Pleas judge who approved the warrant.

dump warrants are categorically unconstitutional, since "it is likely impossible to establish probable cause to search and seize the CSLI of hundreds or thousands of people without even a single named suspect."  As explained, *see supra* note 1, every court to have considered this argument has rejected it.  Even if all these decisions are subsequently found to have been wrongly decided, their holdings underscore why a reasonable officer charged with executing the warrant would have had no basis to conclude that "the search was illegal despite the magistrate's authorization."  *Zimmerman*, 277 F.3d at 436.

An appropriate order follows.


BY THE COURT:


*/s/ Wendy Beetlestone*

_____

**WENDY BEETLESTONE, J.**